UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

CONNIE D. ERICKSON                          CIVIL NO. 14-427 (ADM/JSM)

      Plaintiff,                          REPORT AND RECOMMENDATION

v.

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

      Defendant.

The above matter came before the undersigned on the parties' cross-motions for summary judgment. [Docket Nos. 18, 20].  This matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

For the reasons stated below, the Court recommends that plaintiff's Motion for Summary Judgment [Docket No. 18] be denied and defendant's Motion for Summary Judgment [Docket No. 20] be granted.

## I.     PROCEDURAL BACKGROUND

On February 8, 2010, the Social Security Administration ("SSA") notified plaintiff Connie D. Erickson that her disability ended because of substantial gainful activity and that she was not entitled to disability payments beginning in April, 2006.  (Tr. 59-62).[1] The SSA initially informed Erickson that she had been overpaid $43,971.80 for the period April 2006 through March 2009.  (Tr. 118-120).  This amount was later amended

---

[1]     Erickson became entitled to disability insurance benefits based on statutory blindness effective March 1, 1982.  Erickson is also deaf and communicates using American Sign Language.  (Tr. 48).

to $63,063.80.  (Tr. 41, 90).  On April 13, 2010, Erickson signed a statement that she wished to begin repaying $100 per month to the SSA for amounts she had been overpaid.  (Tr. 74).

On September 9, 2010, Erickson requested a waiver of the overpayment, claiming that the overpayment was not her fault.  (Tr. 78-85).  In connection with her waiver request, the SSA conducted a personal conference with Erickson on February 14, 2011.  (Tr. 87).  The notes from this conference indicated that Erickson's earnings increased 34% between 2006 and 2008, and that Erickson had not reported her increased earnings, as required by SSA regulations.  (Id.).  The SSA determined that Erickson had the ability to repay the overpayment, as she had $38,194.00[2] in savings.  (Id.).  On March 21, 2011, the SSA denied Erickson's request for a waiver, determining that Erickson was "not without fault" regarding the overpayment.  (Tr. 88-89).

Erickson filed a request for hearing on April 28, 2011.  (Tr. 111-113).  On February 16, 2012, a hearing was held before Administrate Law Judge ("ALJ") Michael D. Quayle.  (Tr. 26-37).  On March 5, 2012, the ALJ issued his decision, finding that Erickson was not without fault regarding the overpayment and, therefore, she was not entitled to a waiver.  (Tr. 41-45).  Erickson sought review by the Appeals Council. (Tr. 216).  On February 21, 2014, the Appeals Council issued a partially favorable decision, reducing the overpayment from $63,063.80 to $52,361.00.  (Tr. 4-10).  The Appeals Council otherwise affirmed the ALJ's decision, making that decision final.  (Tr. 8).

Erickson sought review of the ALJ's decision by filing a Complaint pursuant to 42

---

[2]     Erickson stated that her saving had dropped to $30,000.  (Tr. 87).  The SSA representative wrote that the amount would need to be verified, but "clearly claimant has financial resources available to repay a substantial portion of the overpayment without financial hardship."  (Id.).

U.S.C. §405(g).   [Docket No. 1].   The parties cross-moved for summary judgment. [Docket Nos. 18, 20).

## II.   THE ALJ'S DECISION

The ALJ concluded that Erickson had been overpaid $63,063.80 and was not entitled to a waiver of the overpayment because she was "not without fault." (Tr. 43-45).[3]   The ALJ based this conclusion on the following findings: There was no evidence that Erickson made affirmative, incorrect statements to the SSA; therefore, any fault was premised on her failure to provide the SSA with material evidence regarding her earnings or her acceptance of benefit checks she knew were incorrect.   (Tr. 44).   As required by the SSA's regulations, the ALJ considered Erickson's blindness and her reported difficulties in communicating.   (Id.).   The ALJ also considered Erickson's representations that she did not fully understand the technical issues involved with SSA work requirements due to the fact that she communicates in sign language; she went to an SSA office and that some sort of communication breakdown occurred between herself and her sign language interpreter and the SSA representative; and she regularly reported her work status and earnings to the SSA representative, who told her that her increased earnings would only result in increased Social Security benefits.   (Id., citing Tr. 200 (pre-hearing letter from Erickson's attorney to the ALJ dated January 12,

---

[3]   Erickson has not disputed that she was overpaid $52,361.00 for the period of May 2006 through March 2009; only that she was entitled to a waiver of the overpayment.   Plaintiff's Memorandum of Law in Support of Motion for Summary Judgment ("Pl.'s Mem.") [Docket No. 19].   As a result, the Court will only summarize those portions of the ALJ's decision and the evidence that bears on the issues presented by this case, as all other issues are waived.   See Craig v. Apfel, 212 F.3d 433, 437 (8th Cir. 2000) (citing Yeazel v. Apfel, 148 F.3d 910, 911–12 (8th Cir.1998); Misner v. Chater, 79 F.3d 745 (8th Cir.1996)).

2012)).[4]  Erickson testified at the hearing that she told the SSA that she was working and gave the SSA information on her earnings.  (Tr. 44).

The ALJ noted that Erickson reported her work activities to the SSA in 2005, indicating that she understood her responsibility to keep the SSA informed of any changes in her income.  (Id., citing Tr. 52-58).  The ALJ further noted that Erickson had been receiving benefits for many years and had been advised of the importance of notifying the SSA of changes to her income in numerous notices she had received from the SSA during the thirty[5] years in which she had received benefits.  (Tr. 44).  On this basis, the ALJ found that Erickson knew or should have known that acceptance of payments while she was earning in excess of substantial gainful employment was incorrect.  (Tr. 45).  The ALJ found Erickson's monthly expenses of $1,500 reasonable and recommended that the deduction for repayment be limited to no more than $250 per month, half of what the SSA was currently deducting, because Erickson's savings of $25,000 would be rapidly depleted if the SSA deducted $500 per month.  (Id.).

## III.   THE PARTIES CROSS-MOTIONS FOR SUMMARY JUDGMENT

### A.   Erickson's Motion for Summary Judgment

Erickson sought a reversal of the ALJ's decision that she was not without fault for the overpayment and repayment of the funds already deducted.  Pl.'s Mem., p. 19.

---

[4]     In this letter to the ALJ, counsel also stated: "Anyway, eventually Ms. Erickson's earnings reached the point where they were too high for her to be eligible for social security yet her benefits continued to be paid.  Again Ms. Erickson continually went to the social security office to report her earnings and was continually reassured that she was properly receiving benefits.  (Tr. 200).

[5]     The ALJ erred in making this statement.  Erickson began receiving benefits in 1992, which were retroactive to 1982.  (Tr. 176).

4

Erickson argued that the ALJ's determination that Plaintiff was not without fault for the overpayment was not supported by substantial evidence. Id., p. 11.

According to Erickson, the only information she had regarding her duty to report her earnings to the SSA was the boilerplate language included on her 1992 benefit application form.  Id. p. 15.  Erickson submitted that as a deaf and blind individual who communicates through an interpreter, she cannot be held responsible for the "hyper-technical" SSA regulations. Id., p. 18.

At the same time, Erickson claimed she diligently reported her earnings when she had a change in employment.  Id. p.15.  She did so by both going to the Social Security Administration with an interpreter and calling on her relay telephone system. Id.  When Erickson reported her earnings, she was told by someone at the SSA that her benefits would not be affected, other than increasing her benefits.  Id. p. 17, n. 4. Erickson argued that she relied on this information and had no reason to know that the information she received was erroneous.  Id. pp. 13, 17.[6]  Furthermore, the only evidence in the record was that Erickson reported her increased earnings to the SSA and if the ALJ had any questions about this claim, he should have asked.  Id., p. 16.  In fact, the ALJ asked no questions about Erickson's allegation that she properly reported her earnings.  (Id.).  As a result, the ALJ erred by not accepting Erickson's unrebutted statements that she had contacted the SSA about her earnings and in failing to articulate reasons for rejecting her testimony.  Id. (citing Lang v. Astrue, Civ. No. 08-5880 (DWF/JJK), 2009 WL 3711545, at *9 (D. Minn. Nov. 3, 2009)).

---

[6]    In Erickson's pre-hearing letter to the ALJ her attorney stated, with respect to this information, "Ms. Erickson was convinced this information was incorrect."  (Tr. 200).

B.      **Commissioner's Motion for Summary Judgment**

The Commissioner asked the Court to affirm the ALJ's decision because his decision was supported by substantial evidence.  Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Mem."), p. 1 [Docket No. 21].

In support of this argument, the Commissioner noted the following findings by the ALJ: (1) Erickson's earnings from January 2006 through March 2009, exceeded the substantial gainful activity level; (2) the SSA notified Erickson in February 2010, that it would terminate her benefits effective April 2006; (3) the ALJ properly considered Erickson's communication difficulties, but found that Erickson had correctly reported her work activities in 2005, demonstrating that she was aware of her reporting responsibility and was not impeded by her disabilities; (4) Erickson had a long history of receiving benefits; and (5) Erickson received numerous notices informing her of her duty to report. Id., pp. 6-7 (citing Tr. 43, 44-45, 57, 59, 67).  Based on these facts, the Commissioner argued that the ALJ properly concluded that Erickson was "not without fault" in causing the overpayment.  Id., p. 7.

The Commissioner challenged Erickson's assertion that she could not be held responsible for the notice in her 1992 benefit application that she was obligated to report her earnings, noting that Erickson argued both that she did not understand her duty to report and she did understand her duty to report, and in fact, reported her earnings.  Id., p. 9 (citing Pl.'s Mem., p. 17).  According to the Commissioner, Erickson was charged with understanding the reporting requirements when she signed her benefits application.  Id., p. 9 (citing Chapman v. Bowen, 810 F.2d 151, 152 (8th Cir. 1986)).  Further, Erickson received a notice on July 15, 2004, that she was overpaid

benefits in the amount of $783 due to a computation error.  Id., p. 10 (citing Tr. 58).

Erickson also received a notice of disability cessation on July 3, 2005, after she

reported working full-time in 2004, which caused another overpayment.  Id. (citing Tr.

54, 57).  Erickson's benefits resumed in 2005 after she stopped working.  Id. (citing Tr.

51).  Further, Erickson reported her work activity to the SSA in 2005.  Id., p. 11 (citing

Tr. 44, 57).  According to the Commissioner, all of this evidence clearly indicated that

Erickson knew or should have known that her earnings were material to her receipt of

benefits.  Id.

The Commissioner also rebuffed Erickson's argument that she was without fault

because she relied on erroneous information from the SSA – i.e. that increased income

would merely increase her benefits.  Id.  The Commissioner conceded that if an

individual accepts an overpayment based on reliance on erroneous information from an

official source within the Agency regarding interpretation of the Social Security Act or

regulations, then the individual is "without fault" in accepting the overpayment.  Id.

(citing 20 C.F.R. § 404.510a).  But here, Erickson failed to identify any official source

within the Agency who provided this information[7] or any evidence to corroborate her

assertions.  Id., p. 12.

The Commissioner distinguished Lang, on which Erickson relied, from the

present case.  Id., p. 12.  In Lang, plaintiff presented extensive corroborating evidence

---

[7]     In the pre-hearing letter to the ALJ, Erickson represented that she recalled a few
meetings with Linda Gute, a SSA representative who assured her that even though she
was earning more money, it would only increase her benefits.  (Tr. 200, 205).  Erickson
"was convinced this information was incorrect."  (Tr. 200).  Attached to the letter to the
ALJ was a Request for Waiver form prepared by counsel with Erickson's assistance, in
which Erickson made the representation about meeting with Gute.  The waiver form was
not signed by Erickson.  (Tr. 211).

that she had contacted the Agency and had received some erroneous information regarding her benefits.   2009 WL 3711545, at *3.   This evidence included testimony from her husband, a notice from the SSA, and an affidavit from the state district court judge for whom her husband worked regarding discussions the judge had with plaintiff's husband regarding plaintiff's contacts with the SSA.  Id. at *3-4.  The Commissioner noted that in the instant case, Erickson had not provided any evidence at all to corroborate her statements that she contacted the SSA or that she had received erroneous information from an official source within the Agency.  Def.'s Mem., p. 12.

Lastly, the Commissioner rejected Erickson's claim that her disabilities made it impossible for her to understand the "hyper-technical" SSA regulations.  Id., p. 13.  The Commissioner noted that there was no evidence that Erickson ever needed assistance completing her paperwork; she was a high school graduate with three years of college education; and she worked as a teaching assistant in a college level American Sign Language class at the University of Minnesota-Duluth.  Id., pp. 13-14 (citing Tr. 48, 51, 74, 85, 98).  Moreover, the SSA writes its notices at a sixth to eighth grade reading level with an average sentence length of fifteen to twenty words.  Id., p. 14.  As a result, the Commissioner submitted that Erickson's assertion that she did not understand the Agency's reporting requirements was meritless.  Id.

## IV.   THE RECORD AND HEARING TESTIMONY

Erickson applied for disability insurance benefits on August 21, 1992, based on an onset date of January 1, 1978.  (Tr. 49).  The application required Erickson to notify the SSA if her condition improved so that she could work, even if she had not yet begun to work, or if she actually went to work.  (Tr. 50).  Erickson also affirmed on this

application that her reporting responsibilities had been explained to her.  (Tr. 51).  On July 15, 2004, Erickson received a notice from the SSA that she had been overpaid benefits in the amount of $738.  (Tr. 58).

On July 3, 2005, Erickson received a notice from the SSA that her disability benefits were being discontinued because she was deemed able to work.  (Tr. 54-56). This cessation of benefits was based on Erickson's report, made in person (with the assistance of an interpreter) at an SSA office on June 17, 2005.  (Tr. 57).  Erickson told the SSA representative that she was working full time from October 2003 to October 2004, her hours were then cut to part-time, but that she had begun working full time again in April, 2005.  (Id.).

On November 21, 2005, Erickson received a notice from the SSA that her benefits were being resumed effective July 2005.  (Tr. 52-53).  On February 9, 2010, Erickson received a notice from the SSA that "it appears we will decide that your disability ended because of substantial work [sic] January 2006 and that you are not entitled to payments beginning April 2006."  (Tr. 59).  This notice explained the SSA's trial work period of nine months and the meaning of "substantial work."  (Tr. 60-61). Erickson went to an SSA office shortly after receiving this notice with questions about the notice.  (Tr. 63).

On February 8, 2010, Erickson received a Notice of Proposed Decision, (Tr. 59-62), and received a Notice of Revised Decision on March 14, 2010, telling her that the SSA had determined that she was not entitled to benefits beginning April 2006.  (Tr. 67-69).  Erickson received a Notice of Disability Cessation on March 17, 2010, telling her that she no longer qualified for benefits beginning April 2006.  (Tr. 70-73).  On April 13,

2010, Erickson contacted the SSA office and signed a statement that she wished to begin repaying $100 per month to the SSA for amounts she had been overpaid.  (Tr. 74).

After the SSA ultimately determined that Erickson had been overpaid by $63,063.80, Erickson sought a waiver of the overpayment based on lack of fault and inability to pay the funds back.  (Tr. 78).  Erickson was asked to explain why she thought she was due the overpaid funds and not at fault.  Erickson wrote: "cuz of letter were screw up and not straight out money but not my fault." (Tr. 79).  Erickson checked a box stating that she told the SSA "about the change or event that made [her] overpaid" and described her contact as follows:  "I talked to Nancy about letter and FMLA from work last year March and I [am] not able back to work cuz of my health decided to [ ] retire."  (Id.).  Erickson indicated on this form that she had been overpaid in the past in a similar situation and that she had contacted the SSA.  (Id.).

On February 24, 2011, the SSA had a personal conference with Erickson.  At the personal conference, Erickson alleged that she had reported to the SSA when she began working in 2003.  (Tr. 87).  The SSA representative reported:

> A reopened work CDR notice dated 10/21/05[8] informed claimant that although her TWP [trial work period] had been completed, her work was found not to be SGA [substantial gainful employment]. The notice informed claimant that she must report in the future if her earnings changed.  This is in fact what happened.
>
> 2006 earnings were 22.6% higher than 2005 earnings.
> 2007 earnings were 3.9% higher than 2006 earnings.
> 2008 earnings were 7.5% higher than 2007 earnings.
>
> Earnings over 3-year period increased by a cumulative 34.0%.

---

[8]    This Notice is not in the administrative record provided to the Court.

> There was no indication that claimant fulfilled her responsibility to report the increased earnings. She is found to be at fault.

(Tr. 87).

On March 21, 2011, the SSA sent a letter to Erickson informing her that it had denied her request for a waiver. (Tr. 88-89). The SSA explained that Erickson had reported to SSA when she returned to work in October 2003; the SSA told her in a notice dated October 21, 2005, that she had completed her trial work period, but her work was not substantial; the notice told her that she must report any increase in future earnings; her earnings increased sharply in 2006 and went up again in 2007 and 2008,[9] but there was no indication that she had reported her earnings; and therefore, she did not meet her responsibility to keep the SSA informed of changes in her work and earnings. (Tr. 88-89). On April 28, 2011, Erickson checked a box on an SSA form indicating that she could afford to have $500 per month withheld each month to repay the overpayments. (Tr. 95). Erickson did not check the box that stated "the overpayment was not my fault and I cannot afford to pay the money back and/or it is unfair for some other reasons." (Id.).

In connection with her administrative hearing, Erickson submitted another request for waiver of the repayment. (Tr. 204-211). This form is unsigned and was prepared with her attorney's assistance. (Tr. 199, 211). On this form, Erickson stated that the overpayment was not her fault and that she could not afford to repay the benefits. (Tr. 204). Erickson stated "I reported my income and I was told that I was still entitled to benefits." (Tr. 205). Erickson claims she reported her earnings "many times

---

[9] Erickson's earnings in 2005 were $16,301.34; 2006 were $19,989.77; in 2007 they were $20,777.05 and in 2008 they were $22,335.57. (Tr. 136).

at the Duluth Social Security Office and over the phone.  I do recall speaking to Linda Gute several times.  There were others."  (Tr. 200, 205).

Erickson testified at the hearing that April through March of 2009, she worked at St. Mary's Duluth Clinic and stopped working when she developed arthritis in her hands and other health conditions.  (Tr. 31).  Erickson testified that she was being blamed for the overpayment, and this was not her fault, because she had informed the SSA that she was working, kept in touch with them, gave them information on her earnings, had communicated to them that she was working, and the language was difficult with English being her second language.  (Tr. 32).  Erickson further testified that she signed an agreement in April 2010, to repay the overpayment in the amount of $100 per month.  (Tr. 35).

The ALJ asked Erickson's attorney if there was anything further that was not in the file that he believed needed to put on the record.  (Tr. 35).  Counsel only addressed an issue with respect to long term disability benefits.  (Tr. 36).

## V.   LEGAL FRAMEWORK

Congress has prescribed the standards by which overpayment of Social Security disability insurance benefits and supplemental security income benefits may be adjusted or recovered by the United States.

An individual is no longer disabled, and thus no longer entitled to benefits, if she is engaged in substantial gainful activity. 20 C .F.R. § 404.1594(d)(5).  Recovery of overpayment will be waived only if it is determined that the overpaid individual is without fault in causing the overpayment and such recovery of the overpayment would defeat the purpose of Title II of the Social Security Act or be against equity or good

conscience. 42 U.S.C. § 404(b); 20 C.F.R. § 404.506(a). "An individual who has received an overpayment and who is without fault may request waiver of recovery based upon either of these prohibitions, 20 C.F.R. § 404.506, and in doing so, bears the burden of proof." Rodysill v. Colvin, 745 F.3d 947, 949 (8th Cir. 2014) (citing Sipp v. Astrue, 641 F.3d 975, 981 (8th Cir. 2011)); see also Hannon v. Barnhart, 134 Fed. App'x 485, 486 (2d Cir. 2005) (claimant had the burden of establishing that she is "without fault") (citations omitted).

An overpaid individual will be found to be at fault if the facts show one of the following: the incorrect payment or payments resulted from (1) "[a]n incorrect statement made by the individual which he knew or should have known to be incorrect"; or (2) "[f]ailure to furnish information which he knew or should have known to be material"; or (3) "[a]cceptance of a payment which he knew or should have known to be incorrect." 20 C.F.R. § 404.507.

The term "fault" applies only to the individual. 20 C.F.R. § 404.507. "Although the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual . . . from liability for repayment if such individual is not without fault." Id.

"In determining whether an individual is at fault, the Social Security Administration will consider all pertinent circumstances, including the individual's age and intelligence, and any physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual has." 20 C.F.R. § 404.507; see also 42 U.S.C. § 404(a)(1) ("In making for purposes of this subsection any determination of whether any individual is without fault, the Commissioner of Social

Security shall specifically take into account any physical, mental, educational, or linguistic limitation such individual may have (including any lack of facility with the English language)."). Additionally,

> [w]here an individual . . . accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration (or other governmental agency which the individual had reasonable cause to believe was connected with the administration of benefits under title II or title XVIII of the Act) with respect to the interpretation of a pertinent provision of the Social Security Act or regulations pertaining thereto, . . . such individual, in accepting such overpayment, will be deemed to be without fault.

20 C.F.R. § 404.510a. Moreover, in such a situation, "adjustment or recovery will be waived since it will be deemed such adjustment or recovery is against equity and good conscience." 20 C.F.R. § 404.512(a). "Thus, someone who relies on erroneous information from an official source meets both requirements for waiver set forth in 42 U.S.C. § 404(b): he or she is without fault, and recovery would be against equity and good conscience." Gladden v. Callahan, 139 F.3d 1219, 1223 (8th Cir. 1998).

"No showing of bad faith is required [for a finding of fault]: rather, an honest mistake may be sufficient to constitute fault [; moreover, t]he fact that the SSA may have been at fault in making the overpayment does not relieve the recipient from liability if the recipient was also at fault." Center v. Schweiker, 704 F.2d 678, 680 (2d Cir.1983) (citations omitted).

The Court's review of this matter is limited to determining whether the ALJ's decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the

Commissioner only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)). "In assessing the substantiality of the evidence, the Court must consider evidence that detracts from the Commissioner's decision as well as the evidence that supports it." Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir.1993).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Woolf, 3 F.3d at 1213. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

## VI. DISCUSSION

There is no dispute that Erickson was overpaid; the question before this Court is whether substantial evidence supports the ALJ's determination that Erickson was not without fault with respect to the overpayments because she failed to furnish the SSA with the appropriate earnings information or accepted payments that she should have

known were incorrect.  (Tr. 44-45).  This Court has concluded the ALJ's decision was supported by substantial evidence.[10]

First, Erickson's current contention that she did not know she was supposed to report her earnings is contradicted by evidence cited by the ALJ that the opposite was true.  It is clear that in this regard, the ALJ made a credibility determination.  "A court must defer to an ALJ's well-reasoned determinations of credibility if they are supported in the record by substantial evidence."  Pirtle v. Astrue, 479 F.3d 931, 933 (8th Cir. 2007).  "In a waiver-of-overpayment case . . . if an ALJ chooses not to believe a claimant, 'it is necessary . . . that the fact-finder articulate any reasons for questioning the claimant's credibility."  Lang, 2009 WL 3711545, at *7 (quoting Viehman v. Schweiker, 679 F.2d 223, 228 (11th Cir. 1982) (quoting in turn Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981)).  The ALJ properly considered Erickson's impairments and cited to evidence that Erickson was well aware of her duty to report and had, in fact, reported her earnings in 2005.  (Tr. 44).  The ALJ also noted that Erickson had been placed on notice of her duty to report in 1992 when she applied for benefits and in numerous notices she received from the SSA during the time period she had been receiving benefits, a point that Erickson did not contest.  (Id.).  In any event, while the record submitted to this Court does not contain "numerous notices," the record does reflect that on October 21, 2005, the SSA informed Erickson that she must report any increase in future earnings, and there is no record that she ever did that until September

---

[10]   The ALJ made no findings of fact regarding Erickson's contention that she furnished the SSA with her earnings information.  Suffice it to say, there was no evidence to corroborate Erickson's contention that she spoke with SSA representatives repeatedly about her earnings.  Cf. Lang, 2009 WL 3711545, at *3.

2009.[11]  (Tr. 87-89).   Therefore, to the extent that Erickson argued that she did not understand that her benefits were directed related to her income, or did not understand her reporting duties, the ALJ rejected those arguments as contradicted by the evidence.

Second, the ALJ properly concluded that Erickson accepted payments that she knew or should have known were incorrect based on her previous contacts with the SSA and the fact that she previously reported changes to her income.  (Tr. 45).  Again, it was clear that the ALJ made a credibility determination based on Erickson's long history of contact with the SSA, her previous overpayments and the notice she was given in 1992.  All of this evidence rendered any argument by Erickson incredible that she did not understand that she was being overpaid.

Third, to the extent Erickson attempted to rely on a statement by someone at the SSA that increased earnings would only increase her benefits, Erickson "was convinced this information was incorrect."  (Tr. 200).   While the ALJ did not specifically address this issue, he noted that Erickson was well aware of her duty to report, and that she should have known that was incorrect to accept payments while she was earning in excess of substantial gainful activity.  (Tr. 45).  As a long-time recipient of disability payments, Erickson's contention that she did not understand that a dramatic increase in earnings would affect her disability payments was not credible.

Finally, Erickson faults the ALJ for not asking Erickson questions about her claim that she informed the SSA of her earnings.  Pl.'s Mem., p. 16.  It is "well-settled" that "'it

---

[11]    The only "semblance" of a notice that the Court could find in the record was a document entitled "Work Activity Report – Employee" directed to Erickson asking her to tell the SSA about her work since August 1994 because "additional earnings are showing up on your Social Security record."  (Tr. 141-47).  This form was signed by Erickson on September 13, 2009, (Tr. 147), and is followed by a letter of the same date by Erickson, summarizing her earnings dating back to 1990.  (Tr. 148-150).

is the ALJ's duty to develop the record fully and fairly, even in cases in which the claimant is represented by counsel.'" Delrosa v. Sullivan, 922 F.2d 480, 485, n. 5 (8th Cir. 1991) (quoting Bishop v. Sullivan, 900 F.2d 1259, 1262 (8th Cir. 1990) (citing Dozier v. Heckler, 754 F.2d 274, 276 (8th Cir. 1985)).   At the same time, where a claimant is represented by counsel, the ALJ "should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case in a way that the claimant's claims are adequately explored."   Duncan v. Astrue, Civ. No. 08-2144, 2009 WL 1254737 at * 5 (D. Kan. May 5, 2009) (citing Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir. 1997)).   The ALJ has a duty to develop the record during a disability hearing consistent with the issues raised.   Id. (citation omitted).   In this case, Erickson's counsel did not examine Erickson on any issues relating to fault or lack of fault.

Notwithstanding the fact that neither the ALJ nor Erickson's attorney expressly questioned Erickson at the hearing about her claim that she had informed the SSA of her earnings, the ALJ did cite in his decision to her representations to him set forth in her counsel's pre-hearing letter, (Tr. 44 citing Tr. 200), and rejected them.   The ALJ's decision was clearly based on his determination, supported by substantial evidence in the record, that Erickson accepted payments she knew or should have known were incorrect.   Therefore, even accepting Erickson's claim that she had furnished the SSA with the required information about her earnings from 2006 through 2009 (and there is no evidence that she did other than on September 13, 2009, apart from her wholly uncorroborated statements), she can still be found "not without fault" if she accepts payments that she knew or should have known were incorrect.   See 20 C.F.R. § 404.507 (b), (c); Quast v. Barnhart, Civ. No. 01-1422 (JRT/AJB), 2002 WL 31185870, at

*4 (D. Minn. Sept. 30, 2002) (even if the SSA was at fault for making the overpayment, that does not relieve the overpaid individual from liability if the individual was not without fault).

In sum, Erickson had the burden to show that she was without fault regarding the overpayment of benefits.  See Hannon, 134 Fed. App'x at 487.  When an individual fails to show that she was without fault, "the inquiry ends."  Johnson v. Colvin, Civ. No. 1:13-689, 2014 WL 4384224, at *4 (N.D. N.Y. Sept. 3, 2014).  The only evidence Erickson offered in support of her contention that she was without fault was evidence that supported that ALJ's ultimate conclusion that she knew or should have known that she was being overpaid.  As a result, this Court concludes that the ALJ's decision was supported by substantial evidence and should be upheld.

## VII.    RECOMMENDATION

For the reasons set forth above, **IT IS HEREBY RECOMMENDED** that

1.     Plaintiff Connie D. Erickson's Motion for Summary Judgment [Docket No. 18] be denied.

2.     Defendant's Motion for Summary Judgment [Docket No. 20] be granted.

Dated: January 29, 2015

*Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

**NOTICE**

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **February 13, 2015**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.